UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAUREL W.,

                    Plaintiff,

v.                                                      CASE NO. 1:24-cv-00191
                                                        (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 8, 10), as well as Plaintiff's reply brief (Doc. 15). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 8) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 10) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.    RELEVANT BACKGROUND

### A.  Procedural Background

On April 9, 2021, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of March 10, 2021.  (Tr. 58.)  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 91, 104.)   She then timely

requested a hearing before an Administrative Law Judge (ALJ) and appeared with counsel for a telephonic hearing before ALJ Patrick Kilgannon on May 4, 2023. (Tr. 33-56.) On May 25, 2023, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 8-25.) The Appeals Council denied her request for review, (Tr. 1-7), and Plaintiff timely filed her appeal to this Court.

### B.    Factual Background[1]

Plaintiff was born on April 12, 1974, and alleged disability beginning on March 10, 2021. (Tr. 36, 58.) Plaintiff finished high school and obtained an associate's degree. (Tr. 37.) Her disabling conditions were alleged to include back injury and back arthritis. (Tr. 58.)

Plaintiff explained that, on March 10, 2011, she fell down some stairs and fractured a vertebra in her back. (Tr. 43-44.) She was taken to the hospital by ambulance, where she was also informed she had a bulging disc in her back and then later, osteoporosis. (Tr. 44.) Plaintiff described that her upper and lower back remained painful frequently, but she took Ibuprofen and muscle relaxers, which helped manage her pain. (Tr. 44-45.) She indicated that, without the medication, she constantly experienced pain. (Tr. 45.) Plaintiff also explained that she has difficulty bending, twisting, and sitting or standing for more than 20-30 minutes. (Tr. 46-47.) When she experiences the pain, she has to change positions and, ultimately, lie down and take a muscle relaxer. (Tr. 47.)

Plaintiff indicated that she is able to cook, with help from her son, because she cannot stand long. (*Id.*) She also explained that she no longer drives because it causes her pain. (Tr. 48.) She testified she can lift approximately five pounds. (Tr. 49.) She

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ. Other facts will be developed throughout the opinion as relevant to the Court's analysis.

explained that additional treatment, such as surgical intervention, has been discussed, but this has not been pursued because she had been advised the fracture might heal on its own. (*Id.*)

The vocational expert (VE) classified Plaintiff's past work as both medium and light work. (Tr. 50-51.) The ALJ then posed a hypothetical to the VE, asking her to assume "a light exertional level with the ability to lift, carry, push, pull up to twenty pounds occasionally and 10 pounds frequently. Sit six hours and stand and walk six hours in an eight-hour workday with normal breaks and occasional climbing and stooping, but frequent kneeling, crouching and crawling." (Tr. 51-52.) The VE testified that Plaintiff could perform her past work as a recreation aide. (Tr. 52.) The ALJ also provided a hypothetical with limitations involving sedentary work, to which the VE ruled out past work but identified other positions that Plaintiff could perform. (*Id.*)

### C.    ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2025. (Tr. 13.)

2.  The claimant has not engaged in substantial gainful activity since March 10, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*). (Tr. 13.)

3.  The claimant has the following severe impairments: degenerative disc disease of the cervical, thoracic and lumbar spine; and osteoporosis (20 CFR 404.1520(c)). (Tr. 13.)

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 16.)

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift, carry, push, pull up to twenty pounds occasionally and ten pounds frequently; sit six hours and stand or walk six hours in an eight hour workday; can occasionally climb and stoop; and can frequently kneel, crouch and crawl. (Tr. 16.)

6. The claimant is capable of performing past relevant work as a recreation aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). (Tr. 21.)

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2021, through the date of this decision (20 CFR 404.1520(f)). (Tr. 21.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by

evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

    **B.**    **Standard to Determine Disability**

    To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

    At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers

in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff's sole argument in support of remand is that the ALJ erred in failing to find the chronic left shoulder injury[2] to be a severe impairment and further not including any limitations from the impairment in the RFC finding, specifically reaching and handling limitations, or increased carrying limitations when considered with her other functional limitations.  (*See* Doc. 8-1 at 17-18.)  Plaintiff points to the opinion of Dr. Pollack, who found a mild restriction in reaching and whose opinion was found by the ALJ to be persuasive, as support for her argument that additional RFC limitations are necessary. (*See id.* at 18.)  Plaintiff further contends that the ALJ erred by not explaining his rejection of this portion of Dr. Pollack's opinion. (*See id.*)

In finding Plaintiff's left shoulder condition to be non-severe, the ALJ addressed several of Plaintiff's other conditions, noting:

> By contrast, the record fails to show that the claimant's dyslipidemia, left knee bone bruise, left elbow impairment, degenerative joint disease of the left shoulder and major depressive disorder have more than a de minimis effect on her ability to perform work activities. As such, these impairments are considered non-severe.
>
> Diagnostic imaging studies well before the alleged onset date show left knee, elbow and shoulder impairments. . . . A November 8, 2018 MRI of the claimant's left shoulder showed acromioclavicular joint effusion and adjacent bursal fluid collection, tenosynovitis of the long head of the biceps and subacromial/subdeltoid bursitis. Treatment records since the alleged onset date show essentially normal examination findings with regard to the claimant's knees, elbows and shoulders.

---

[2] The Court notes that the record does not reflect that Plaintiff affirmatively identified her shoulder condition as a disabling condition in her initial disability determinations.  (*See* Tr. 58, 71) (identifying impairments as back injury and back arthritis).  Nor did she discuss it during the hearing.  (*See* Tr. 33-56.)  She did identify shoulder pain generally at the reconsideration level, but no injury or diagnosis.  (*See* Tr. 252.)

(Tr. 13-14) (internal citations omitted).

The ALJ also recognized Plaintiff's decreased range of motion in her shoulder in his evaluation of consultative examining physician Dr. Pollack's medical opinions:

> As for the opinion evidence, the claimant was evaluated by consultative examiner Andrea Pollack, D.O., in August 2021 . . . She had decreased shoulder, hip and knee range of motion and full range of motion of the elbows, forearms, wrists, fingers and ankles. She had full strength in the upper and lower extremities and no sensory abnormalities. Dr. Pollack concluded that the claimant had marked restriction in bending, lifting, and carrying; a moderate to marked restriction in squatting; a mild restriction in pushing, pulling, reaching, walking, standing, climbing stairs, kneeling, and sitting.
>
> On March 18, 2022, the claimant was evaluated again by Dr. Pollack . . . . She had full range of motion of the shoulders, elbows, forearms, wrists, fingers and ankles bilaterally. She had decreased range of motion of the hips and knees. Her joints were stable and non-tender with no heat, redness, swelling or effusion. She had full strength in the upper and lower extremities and no sensory deficits. She had intact hand and finger dexterity and full grip strength bilaterally. Dr. Pollack concluded that the claimant had a moderate to marked restriction in squatting; a marked restriction in bending, lifting, carrying; a mild to moderate restriction in walking, standing, climbing stairs, kneeling; and a mild restriction in sitting.
>
> The undersigned finds the opinions of Dr. Pollack in August 2021 and March 2022 generally persuasive. They are based on in-person evaluations but use vague terms such as moderate and marked to describe the claimant's limitations. They are mostly supported by her examination findings and consistent with treatment records discussed above but seem to overstate the degree of the claimant's limitations in lifting and carrying based on consistent findings of normal strength in the upper and lower extremities.

(Tr. 19-20) (internal citations omitted).

Having reviewed the record, the Court finds that ALJ Kilgannon's classification of Plaintiff's shoulder condition as a non-severe impairment was supported by sufficient evidence because there is no evidence that Plaintiff's shoulder condition causes more than a minimal effect on her ability to perform physical basic work-related activities.

In fact, the only evidence that either party points to as suggesting any injury or impairment to the shoulder is the shoulder MRI from 2018, namely a comment in a treatment report following Plaintiff's fall that notes a prior shoulder surgery, and a physical therapy note identifying a goal of increasing the ease of overhead reaching and some limitation in the shoulder's range of motion.  (*See* Tr. 580, 324, 668.)  And while the 2018 imaging report reflected some abnormalities, the report was from 2018—well before the disability onset date of March 10, 2021.  (*See* Tr. 580) (noting MRI in 2018); (Tr. 57) (noting alleged disability onset date of March 10, 2021.)  Additionally, the hospital record reflects only that a shoulder surgery occurred previously. (*See* Tr. 324) (identifying right arm rotator cuff repair in 2016.) It does not identify a continual injury or impairment, or any functional limitations.  (*See id.*)  Similarly, the physical therapy note identified by Plaintiff, while within the relevant period, does not identify an impairment of any kind pertaining to the shoulder. (*See* Tr. 666-69) (reflecting Plaintiff was referred to physical therapy for her fractured vertebra; identified a goal of increasing ease of overhead reaching; no mention of a shoulder condition.)  Rather, it reflects a goal to increase the ease of overhead reaching as a result of a thoracic and lumbar spine conditions. (*See* Tr. 668).  Thus, none of this evidence can establish a severe impairment pertaining to the shoulder.

Further, no medical opinion identified Plaintiff's shoulder condition as being a severe impairment—or even any impairment at all.  Both of Dr. Pollack's examinations identified Plaintiff's chief complaint as back and neck pain.  (Tr. 422, 503.)  Neither report diagnoses a shoulder condition.  (*See* Tr. 424) (diagnosing neck and back pain with radiation and osteoporosis); (Tr. 505) (back pain with radiation.) While Dr. Pollack's 2021

report identified limitations in Plaintiff's shoulder examinations, opining to a mild limitation in Plaintiff's ability to reach, her 2022 examination reflected a normal range of motion in Plaintiff's shoulders and so, logically, no restrictions on handling. (*Compare* Tr. 423-24 *with* 504-05.)    Additionally, neither of the agency reviewers identified a shoulder impairment or assigned any restrictions on reaching. (*See* Tr. 63-65, 82-85.)

Moreover, Plaintiff has not identified, nor does the record contain, any functional limitations resulting from Plaintiff's shoulder condition. While some treatment notes reflect pain related to reaching, the associated pain area is the thoracic and lumbar spine. (*See, e.g.,* Tr. 656, 632, 642.)  Indeed, Plaintiff does not identify any treatment note where she self-reported pain[3] or limitation as a result of her shoulder condition, or any objective evidence that would reflect a significant impairment lasting more than one year as required by the pertinent regulations.  To the contrary, the abnormalities reflected in Dr. Pollack's initial examination had resolved in less than a year. (*Compare* Tr. 423 *with* Tr. 504) (reflecting that in approximately seven months, Plaintiff's shoulder abnormalities resolved.)  And it is well-settled that the mere mention of a medical condition does not automatically translate to functional limitations or into disability.  *Ashley E. v. Comm'r of Soc. Sec.*, No. 622CV299GTSCFH, 2023 WL 6217792, at *7 (N.D.N.Y. Aug. 21, 2023), *report and recommendation adopted,* No. 622CV0299GTSCFH, 2023 WL 6215829 (N.D.N.Y. Sept. 25, 2023) (recognizing that "a reference to a medical condition or a diagnosis does not establish functional limitations") (citing *Crysler v. Astrue*, 563 F. Supp. 2d 418, 440 (N.D.N.Y. 2008)).

---

[3] Although Plaintiff did note in her request for reconsideration that she experienced shoulder pain, (*see* Tr. 252), she provided no description as to the type, severity, or length of such pain. Additionally, neither this document or any other reflects that Plaintiff obtained treatment during the relevant period for a shoulder condition or shoulder pain.

While Plaintiff contends that her shoulder impairment would result in manipulative limitations, such as reaching or handling, or even additional carrying restrictions (when combined with other limitations), nothing in the record supports such additional restrictions. Although Dr. Pollack's initial report contained mild limitations on reaching, her subsequent report and examination do not support such restrictions. (*Compare* Tr. 423 *with* Tr. 504.) Thus, it is not error for the ALJ to not have included such restrictions in his RFC, as the second examination shows that the limitations resolved.[4] Moreover, it remains Plaintiff's burden to prove disability. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (explaining that the claimant bears both the general burden of providing disability and the burden of proving steps one through four).

And even if the ALJ had accepted a mild reaching restriction, it need not be reflected as a functional limitation in the RFC. By definition, a non-severe limitation does not significantly limit the claimant. *See* 20 C.F.R. § 404.1522. Thus, the RFC is not necessarily inconsistent with Dr. Pollack's mild limitation. *See Richard B. v. Comm'r of Soc. Sec.*, No. 1:19-cv-0579 (WBC), 2021 WL 22504, at *6 (W.D.N.Y. Jan. 4, 2021) (recognizing that even "a 'moderate' limitation in reaching does not necessarily preclude the ability to 'frequently' reach") (internal citation omitted). Moreover, the Court cannot accept Plaintiff's invitation to assume the ALJ rejected the mild limitation just because it was not mentioned. It is well-settled that not mentioning evidence does not mean it was not considered. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)

---

[4] While Plaintiff argues that the ALJ improperly did not explain his reasoning for rejecting Dr. Pollack's reaching limitation, the Court finds that it can glean the ALJ's rationale for not including the reaching limitation: it resolved within less than one year and mild restrictions were not consistent with the medical record as a whole. "An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n. 3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040). As such, there is no error.

(citing *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998) (noting that "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").

Significantly, the evidence Plaintiff identifies as supporting her position was noted and considered by the ALJ. (*See* Tr. 14, 17, 18) (identifying the treatment records on which Plaintiff relies). The ALJ expressly identified the evidence and considered it in formulating his RFC. As such, Plaintiff is asking the Court to reweigh the evidence because she disagrees with the ALJ's conclusion, which is something the Court is prohibited from doing. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination."). It is squarely within the ALJ's purview to resolve conflicts within the evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Thus, even when there is evidence also supporting Plaintiff's position, this Court must affirm the ALJ's findings. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'") (emphasis in original) (citation omitted); *Livia R. v. Comm'r of Soc. Sec.*, No. 23-CV-1319S, 2025 WL 922642, at *2 (W.D.N.Y. Mar. 27, 2025) (citing *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (noting that, when supported by substantial evidence, the

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].").

Finally, the ALJ did not abdicate his duty to develop the record. The Court acknowledges that "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). This requires the ALJ to develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)–(f)). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). *See also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("[An] ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability.")

Plaintiff argues that the ALJ did not ensure that all of Plaintiff's physical therapy notes were included in the record. However, the Court notes that Plaintiff was represented by counsel during these proceedings, and counsel affirmatively assured the Court that all relevant records had been submitted. (*See* Tr. 36.) Further, the Court notes that the record contains multiple physical therapy notes, albeit from another provider, but even more recent and which reflect Plaintiff's improvement with therapy. (*See, e.g.,* 632-37, 642-47, 655-60.) All physical therapy records reflect treatment for thoracic and lumbar

spine conditions—not the shoulder.  (*See id.*)  Because Plaintiff's challenge is directed towards her shoulder condition, additional records would not have altered the ALJ's determination.  While Plaintiff also contends that a treating physician's RFC opinion was missing from the record, (*see* Doc. 15 at 5), there is no evidence that opinion exists, as Plaintiff has not proffered it, and Dr. Umar only indicated he would complete the form—not that he had, (*see* Tr. 630).  The Court finds no error.

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 10) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: November 5, 2025                      J. Gregory Wehrman
Rochester, New York                          HON. J. Gregory Wehrman
                                             United States Magistrate Judge